# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOHN D. TENNANT, IV,<br><br>      Respondent,<br><br>      v.<br><br>DALE E. WADDELL, II and KIMBERLY K. WADDELL, husband and wife,<br><br>      Appellants. | No. 87683-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — John Tennant, IV brought this action for declaratory and injunctive relief against his neighbors Dale and Kimberly Waddell. Tennant's only access to his property is by an easement road across the Waddell property. In 2018 the road was in a state of disrepair, with deep potholes and a crowned center. When Tennant attempted to smooth out the road, the Waddells stopped him, and sent him a letter effectively prohibiting him from doing any further work on the road. When Tennant received the letter, he stopped his work on the easement road and brought this action against the Waddells. In 2024, after a one day bench trial, the superior court entered judgment granting declaratory relief and a permanent injunction in favor of Tennant. The Waddells appeal, arguing Tennant did not establish a justiciable controversy or an entitlement to permanent injunctive relief. We affirm.

I

Tennant lives at 938 Oak Point Road in Longview, Washington. He has lived there since 1998. The neighboring property to the east is 930 Oak Point Road, owned by the Waddells. Access to 938 Oak Point Road requires using an easement road across the Waddell property. The easement was recorded in 1991 between prior owners of the Tennant and Waddell properties. The easement stated that it granted "access for ingress, egress and utilities," that the "owner of any tract benefitted by the [e]asement may improve the [e]asement as necessary for access for ingress, egress and utilities," and that the easement ran with the land to successive owners and assigns. Bernie and LaRita Larson, the prior owners of Tennant's property, brought an action for quiet title to the easement and injunctive relief against the Waddells. The 1997 decree quieted title to the easement in favor of the Larsons, declared the easement to be 16 feet in width "for ingress, egress and utilities," ordered that the easement is subject to the Larsons' "respective responsibility" for their "proportionate share of the expense of maintenance and upkeep of said easement," and enjoined all parties from interfering, harassing, or frustrating each other's use and quiet enjoyment of their respective properties and the easement.

Because the easement road was in a state of "horrible disrepair," with a crown in the center and potholes, Tennant purchased a power grader to take the crown off and smooth out the road. On July 3, 2018 (RP 77), Tennant attempted to use the power grader, but he was stopped by Kimberly Waddell. On July 10,

2

2018, the Waddells sent Tennant a letter and an attached map. In the letter, the Waddells wrote,

> We have asked you not to do anything to driveway from the Y out to the county road and you continue to do what you want. So I have talk[ed] to an attorney and you only have the right to ingress, egress and utilities. You can clear a tree if it falls and you can pick up branches and put it on the upper side of the driveway, but you must let us know if and when it happens. This is the ONLY thing[] you can do from here on out as long as you live on that property. This is the law John. You also signed you[r] real-estate [sic] agreement that you agreed and understood that the easement was and still is ingress, egress and utilities. This is what you agreed to by signing your real estate agreement when you bought you[r] place.

On the attached map, the Waddells wrote over Tennant's parcel, "[y]ou can do anything you want on your own property," and over their parcel, "[t]his is our property. You will do only what was described in the attached letter!" In response to this letter, Tennant "[q]uit" his maintenance of the easement road. At the time of trial, the Waddells had not retracted the letter.

Tennant scratches and scrapes the bottoms of his cars when driving on the easement road. He struggles to bring his boat in and out on the road, often scratching it too. He has to drive through brush and under leaning trees to use the road. The road has a crown in the center and deep potholes. Tennant's expert witness testified that the road looked "like an un-maintained road." There are trees and branches hanging into the road. The expert testified that the grass crown in the center of the road would scrape most vehicles. He measured the easement road as eight or nine feet wide. .

The expert testified that to make the easement road travelable by car, necessary maintenance would include trimming the brush and trees, widening it to

3

12 feet, regrading the road, smoothing the holes out, filling the potholes, and graveling it. To make the road passable for emergency vehicles, the road would need clearance of 14 feet in width and 13 and a half feet in height. The expert testified that the 16 foot wide easement provided sufficient space. And he provided a project proposal to do the above described work, estimating a two day project costing $6,000.

The superior court found that the easement road was "close to unusable," that the Waddells had interfered with Tennant's use of the easement, and that the limitations imposed by the Waddells in the July 2018 letter were "unacceptable," an interference of Tennant's use and enjoyment of the easement, and a risk to his health and safety. The superior court entered a judgment granting declaratory relief by defining the terms for maintenance and improvement of the easement, including shared costs between the parties, and an injunction prohibiting the Waddells from interfering with Tennant's use, enjoyment, and reasonable maintenance of the easement.

The Waddells appeal.

II

The Waddells assert that the superior court erred in granting declaratory judgment to Tennant because the conflict was nonjusticiable due to the absence of an actual, present, and existing dispute between the parties, and because a judicial determination would not be final or conclusive. We disagree.

We review orders, judgments, and decrees pursuant to the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, de novo. Borton & Sons,

4

Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). The UDJA is designed to "settle and afford relief from insecurity and uncertainty with respect to rights, status, and other legal relations and is to be liberally construed and administered." DiNino v. State ex rel. Gorton, 102 Wn.2d 327, 330, 684 P.2d 1297 (1984). Before the court's authority may be invoked under the UDJA, there must be a justiciable controversy. To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001). A justiciable controversy is defined as

> "(1) . . . an actual, present, and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract, or academic, and (4) a judicial determination of which will be final and conclusive."

Id. (alteration in original) (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). Unchallenged findings of fact are accepted as true. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

The Waddells argue that there was no actual, present, or existing dispute because Tennant filed his complaint in 2018 but "[t]he parties had no issues with maintenance [of the easement] from 2018-2023." Additionally, the Waddells argue that the dispute is speculative, not final, because they did not have the chance to review or respond to the expert's road improvement proposal before trial, so they "never refused to allow improvements to the road." The Waddells do not challenge the superior court's findings of fact.

The easement road was in a state of disrepair in 2018, Tennant attempted to remedy that, he was stopped by Kimberly Waddell and he subsequently

received a letter from the Waddells, which improperly dictated Tennant's rights with regard to easement maintenance. The Waddells do not challenge the trial court's finding, and so we accept as true, that Kimberly Waddell wrote Tennant "dictating to him what he can and cannot do regarding improvement of the easement," despite having no right to do so. At the time of trial, the Waddells had not retracted their letter. These facts support the conclusion that there was an actual, present, and existing dispute between the parties.

The Waddells assert that Tennant "effectively obtained court approval for his vague future plans to improve the road," providing them "no opportunity to engage in" or to "participate in determining how or to what extent the road shall be improved." The Waddells argue that Tennant will "take actions that may instigate further disputes between the parties," and as a result, the judgment is not a final judicial determination. The dispute concerns the parties' respective rights and obligations relating to the easement. The Waddells told Tennant, contrary to the earlier easement agreement , that he had no right to maintain the easement road. A judicial determination of rights under a writing is one of the purposes of the UDJA. RCW 7.24.020. The superior court's judgment defines the parties' respective rights and obligations regarding maintenance of the easement. See State v. Am. Tobacco Co., 28 Wn. App. 2d 452, 472-73, 537 P.3d 303 (2023) (judicial determination is justiciable when it would end recurring dispute over definition of term "units sold"). The possibility of future disputes related to the easement is speculative, and does not disturb the finality of the declaratory judgment concerning the parties' rights and obligations regarding maintenance.

6

III

The Waddells contend that the superior court erred in enjoining them from interfering with Tennant's use, enjoyment, and maintenance of the easement because their actions did not constitute "an immediate threat to [Tennant's] easement rights," and because there was no evidence of any injury. We disagree.

"A party seeking an injunction must show (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) actual and substantial injury as a result." Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 445-46, 327 P.3d 600 (2013). We review a trial court's decision to grant an injunction, and the terms of the injunction, for abuse of discretion. Id. at 446. Injunctions can be appropriate to enjoin "incidents" of "rare" conduct by parties to an easement agreement. See Snyder v. Haynes, 152 Wn. App. 774, 781, 217 P.3d 787 (2009) (unauthorized use of easement road was "rare" but the trial court's determination to enjoin conduct was affirmed).

The superior court found that the Waddells interfered with Tennant's use, enjoyment, and maintenance of the easement. It found that Kimberly Waddell wrote a letter dictating to Tennant his rights to maintain the easement, that the easement road was "close to unusable," and that limitations on Tennant's use "constitute[d] interference with [his] use and enjoyment of the easement and may jeopardize [his] health and safety." The superior court also found that the Waddells had "placed cat manure along the fence next to [Tennant's] home and garage," despite having 30 acres of property—an action intended to harass Tennant.

7

These findings supported the superior court's conclusion that Tennant was entitled to an injunction. Tennant had a well-grounded fear of immediate invasion of his right to use, enjoyment, and maintenance of the easement because when he attempted to repair it, Kimberly Waddell stopped him. And this fear continued due to the unretracted letter the Waddells sent Tennant. Evidence of actual and substantial injury included Tennant's home being inaccessible to emergency vehicles, his cars being damaged while using the road, and his involuntary subjection to the odors of cat manure.

IV

Both parties request attorney fees. The Waddells ask on the basis of overturning an improperly granted injunction. Because we affirm the superior court's injunction, we deny the Waddells request for attorney fees. Tennant alleges that the Waddells' appeal is frivolous and sanctionable under RAP 18.9(a). He contends that the Waddells filed this appeal to delay his improvement of the road. "An appeal is frivolous if, considering the whole record, the court is convinced there are no debatable issues on which reasonable minds may differ and it is totally devoid of merit." In re Matter of Recall of Boldt, 187 Wn.2d 542, 556, 386 P.3d 1104 (2017). "All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. An appeal that is affirmed simply because the arguments are rejected is not frivolous." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013) (internal citation omitted). Although we are not persuaded by the Waddells' arguments, we do not agree with Tennant's

assertion that their appeal is totally devoid of merit. We deny Tennant's request for attorney fees.

Affirmed.

_____
Birk, J.

WE CONCUR:

_____        _____
Chung, J.                                Mann, J.